**QURESHI LAW PC**
Omar G. Qureshi (Cal. Bar No. 323493)
omar@qureshi.law
Max A. Schoening (Cal Bar No. 324643)
max@qureshi.law
700 Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (213) 600-6096
Fax: (213) 277-8989

*Attorneys for Arturro Jordan*

UNITED STATED DISTRCIT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ARTURRO JORDAN, | Case No.: |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | 1. **Excessive Force, 42 U.S.C. § 1983**
2. **Municipal Liability – Policy, Practice, or Custom, 42 U.S.C. § 1983**
3. **Municipal Liability – Failure to Train, 42 U.S.C. § 1983**
4. **Municipal Liability – Ratification, 42 U.S.C. § 1983**
5. **Supervisory Liability, 42 U.S.C. § 1983** |
| CITY OF HEMET, a municipal corporation; JESSE ZUNIGA, an individual; and DOES 1 through 10, individuals, inclusive, | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Arturro Jordan hereby complains against Defendants CITY OF HEMET; JESSE ZUNIGA, and DOES 1 through 10 (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1. This civil rights action seeks compensatory and punitive damages for the violations of Plaintiff Arturro Jordan's federal constitutional rights by Defendants CITY OF

HEMET ("CITY"), JESSE ZUNIGA ("ZUNIGA"), and DOES 1-10. Hemet Police Department ("HPD") officers, including ZUNIGA and DOES 1-8, used excessive force against Mr. Jordan on May 2, 2023, when they tackled him to the ground, repeatedly tased him in the back, kneed him in the head, and pinned him to the ground with a knee to the back of his neck, among other actions. The officers' use of excessive force against him resulted in significant physical pain and injuries, as well as mental harms, including but not limited to severe anxiety and mental anguish. DOES 9-10 supervisors failed to prevent the excessive force by their subordinates. Defendant CITY is liable under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## GENERAL ALLEGATIONS

### JURISDICTION AND VENUE

2. The Court has jurisdiction over Mr. Jordan's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because he asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2), because all incidents, events, and occurrences giving rise to this action occurred within this district.

### PARTIES

4. Arturro Jordan is an individual who resides in Riverside County, California.

5. At all relevant times, Defendant CITY is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the HPD and its agents and employees. At all relevant times, Defendant CITY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the HPD and its employees and agents complied with the laws of the United States and of the State of

California. At all relevant times, CITY was the employer of ZUNIGA and DOES 1-10, inclusive.

6. At all relevant times, Defendant ZUNIGA, an individual, is and was a police officer working fort the HPD. At all revenant times, he was acting under color of law within the course and scope of his duties as an officer working for HPD, and with the complete authority and ratification of his principals, CITY and HPD.

7. At all relevant times, Defendants DOES 1-8, individuals, inclusive, were and are duly appointed HPD Officers, Sergeants, Lieutenants, and employees and agents ("Officer DOES") of Defendants CITY and HPD (regardless of rank or title), subject to oversight and supervision by Defendant CITY's elected and non-elected officials and acted within the course and scope of their employment and under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usage of Defendant CITY and HPD, and under color of the statutes and regulations of the State of California.

8. At all relevant times, Defendants DOES 1-8 were the agents of each Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each Defendant. At all relevant times, Defendants Officer DOES, inclusive, acted with the complete authority and ratification of their principals, Defendant CITY and HPD.

9. Defendants DOES 9-10 ("Supervisor DOES"), individuals, inclusive, were and are managerial, supervisorial, or policymaking employees of the Defendant CITY and HPD who were acting under color of law within the course and scope of their duties as supervisorial officials for the HPD. Defendants DOES 9-10, inclusive, were acting with the complete authority of their principals, Defendants CITY and HPD.

10. ZUNIGA and DOES 1-10 are sued in their individual capacities.

11. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the

fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

12.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

13.     Plaintiff is informed and believes, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

14.     All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

15.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein all individual Defendants, including Defendants ZUNIGA and DOES 1-10, acted under the color of law, statute, ordinance, regulations, customs and usages of the State of California and Defendant CITY.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

16.     Plaintiff herein incorporates by reference all prior allegations as if set forth in full.

17.     On or about May 2, 2023, HPD officers encountered Mr. Jordan in the parking lot at 1134 West Devonshire Avenue, in Hemet, California. At least two HPD vehicles pulled into the lot. Defendant ZUNIGA got out of his vehicle and approached Mr. Jordan.

18.     ZUNIGA and another HPD officer tackled Mr. Jordan to the pavement, struck him, and tased him at least once. They then pinned Mr. Jordan face down on the pavement, with ZUNIGA and the other HPD officer on top of his legs, back, and arms. A wall was a few inches

to their left and a police vehicle was a few inches to their right. Mr. Jordan was not carrying a weapon or any other dangerous objects. Several other HPD officers were nearby at the scene.

19. While one officer straddled Mr. Jordan from behind and pushed his head down to the pavement, ZUNIGA tased Mr. Jordan in the back. ZUNIGA then pointed his taser at a female bystander who was carrying a baby, standing more than 15 feet away, and posed no threat to anyone.

20. ZUNIGA then stood up and forcefully kneed Mr. Jordan in the head. Mr. Jordan was unable to shield his head from ZUNIGA's knee because ZUNIGA was grabbing one of his wrists, while the other officer held his other hand behind his back, and remained straddled on Mr. Jordan's backside, pinning his body to the ground.

21. ZUNIGA next drove his knee and lower leg on top of the back of Mr. Jordan's neck. Then, with ZUNIGA and the other officer holding both of Mr. Jordan's arms behind his back, ZUNIGA tased Mr. Jordan in the back again. With Mr. Jordan's arms still restrained behind his back, ZUNIGA tased him again in the back.

22. The officers handcuffed Mr. Jordan. After he was handcuffed, ZUNIGA kept his knee on the back of Mr. Jordan's neck and then upper back.

23. At no point during the incident did HPD officers warn Mr. Jordan about their imminent use of the taser before tasing him. Nor did they ever warn him that they would strike or knee him, or otherwise use force against him.

24. At no point during the incident did Mr. Jordan strike, fight, attack or engage in any other violence towards the officers or any other person, or threaten their safety. During the incident, Mr. Jordan feared for his life. Each tasing and physical blow to his body caused significant pain.

25. The excessive force by the HPD officers inflicted severe pain on Mr. Jordan as well as serious injuries to his body and head, including but not limited to 14 puncture wounds from the tasing, bruising, body aches, neck pain, migraine headaches for months, and lasting back pain.

26. As a result of the above-described conduct, Mr. Jordan has also suffered great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. He was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## FIRST CAUSE OF ACTION

**Violation of the Fourth Amendment – Excessive Force (42 U.S.C. § 1983)**

(Against Defendants ZUNIGA and Officer DOES)

27. Mr. Jordan refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

28. At all relevant times Defendants ZUNIGA and Officer DOES acted under the color of state law and within the course and scope of their employment as HPD officers for Defendant CITY.

29. The Fourth Amendment of the United States Constitution, as applied to state actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

30. Defendants ZUNIGA and Officer DOES used excessive and unreasonable force against Mr. Jordan when they tackled him to the ground, struck him, repeatedly tased him, kneed him in the head, and pinned him to the ground with a knee to the back of his neck and back, among other actions. Defendants ZUNIGA's and Officer DOES's unjustified use of such force deprived Mr. Jordan of his right to be secure in his person against unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

31. When Defendants ZUNIGA and Officer DOES used the above-described force against Mr. Jordan, no officer or other person was about to be harmed by him. He posed no threat to the safety or bodily integrity of others. No warning was given that the tasing, kneeing, or other applications of force would be used. Several less-intrusive alternatives to ZUNIGA's

and Officer DOES's use of force were available to them at the time, including commands and warnings.

32. ZUNIGA and Officer DOES caused serious physical and mental injuries to Mr. Jordan by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. These acts and omissions violated Mr. Jordan's Fourth Amendment rights.

33. As a result of their misconduct, Defendants ZUNIGA and Officer DOES are liable for Mr. Jordan's injuries, either because they were integral participants in the excessive use of force, or because they failed to intervene to prevent these violations.

34. The misconduct directly caused Mr. Jordan to suffer great physical and mental injuries.

35. Accordingly, Defendants ZUNIGA and Officer DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

36. The misconduct of ZUNIGA and Officer DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Jordan and warrants the imposition of exemplary and punitive damages in an amount according to proof.

## SECOND CAUSE OF ACTION

**Municipal Liability – Policy, Practice, or Custom (42 U.S.C. § 1983)**

(Against Defendants CITY and Supervisor DOES)

37. Mr. Jordan refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

38. Defendants ZUNIGA, Officer DOES, and Supervisor DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant CITY.

39. Defendants ZUNIGA, Officer DOES, and Supervisor DOES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

40. On information and belief, Defendants ZUNIGA, Officer DOES, and Supervisor DOES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the excessive use of force against Mr. Jordan.

41. A municipality is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell,* 436 U.S. at 658.

42. On and for some time prior to and after May 2, 2023 (and continuing to the present date), Defendant CITY deprived Mr. Jordan and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing, and applying the following unconstitutional customs, policies, and practices:

    a. Using excessive force, including by using tasers.

    b. Providing inadequate training regarding the use of force, including the use of tasers.

    c. Employing and retaining CITY police officers, including Defendants ZUNIGA and DOES, and other HPD officers, who CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY and HPD policies concerning the use of force, including the use of tasers.

    d. Inadequately supervising, training, controlling, assigning, and disciplining CITY police officers, including Defendants ZUNIGA and DOES, concerning the use of force, including the use of tasers.

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Defendants ZUNIGA and DOES, and other CITY police officers.

f. Ratifying the misconduct and unlawful uses of excessive force by CITY officers, including Defendants ZUNIGA and DOES, and other CITY police officers (including but not limited to the misconduct and excessive force used against Mr. Jordan).

g. Failing to discipline Defendants ZUNIGA and DOES, and other CITY officers for conduct contrary to law and departmental policy (including, but not limited to the misconduct and excessive force used by Defendant officers against Mr. Jordan).

h. Failing to re-train Defendants ZUNIGA and DOES, and other CITY officers concerning the use of force despite complaints of excessive force filed against CITY officers with the CITY, in the Superior Courts and in the District Courts.

i. Encouraging, accommodating, or facilitating a "thin blue line," "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which CITY police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing.

j. Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

43. Upon information and belief, CITY, including but not limited to HPD, have an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer use-of-force incidents to be within policy, of not disciplining its officers involved in use-of-force incidents, or not retraining or firing officers involved the incidents, and of not recommending

criminal charges against their officers involved in excessive and unreasonable use of force. As a result, officers involved in excessive uses of force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive force against the citizens that the officers are supposed to protect and serve.

44. Upon information and belief, as a result of CITY's policy, custom and/or practices, officers know that if they use excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous uses of excessive force. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive force.

45. Upon information and belief, this policy, custom and/or practice is long lasting and persistent, and existed well before Defendants ZUNIGA and Officer DOES used excessive force against Mr. Jordan on May 2, 2023. This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive force against. This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its police department and so that CITY can avoid the repercussions associated with its officers' use of excessive force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom and/or practice was established was to avoid the CITY being liable for the uses of excessive and unreasonable force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all, of its officers' uses of force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable force, then CITY is aware of how much they would have to pay for any associated litigation.

46. The policies, customs, and practices of CITY were done with a deliberate indifference to individuals' safety and rights.

47. Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY's unconstitutional policies, where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits and events, which indicates that Defendant CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

48. In *Story v. City of Hemet et al.*, No. 5:203-cv-01534, on January 26, 2023—fewer than four months before the incident in question here—Defendant ZUNIGA and several other HPD officers beat a man with batons, tasers, and other improvised weapons, resulting in a broken leg and head injury to the man. As alleged in the complaint in the case, Defendant Officer Jesse Zuniga kicked the man in the face. The case has settled.

49. In *Robinson v. City of Hemet,* et. al, No. 5:23-cv00264, on February 22, 2021, HPD officers tased and repeatedly punched a disabled man who posed no threat to the officers. The case has settled.

50. In *Gavia v. City of Hemet, et al.*, No. 5:23-cv-724, on April 26, 2021, HPD officers punched, kneed, and kicked a man who they did not have reasonable suspicion to detain or probable cause to arrest. The case has settled.

51. In *Barnhill v. City of Hemet*, *et al.*, No. 5:23-cv-00589, on April 29, 2022, HPD officers shoved a man into a wall, threw him to the ground, kneed him in the face and participated in a group beating that resulted in a blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma. The case is being litigated in federal court.

52. In *Acosta v. City of Hemet, et al.,* No. 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers, in May of 2018. HPD officers encountered the plaintiff in a truck near a business where an alarm was going off. The officers saw the plaintiff begin slowly driving away, at which point one officer fired ten rounds at the plaintiff's truck. Another officer then intentionally crashed his vehicle into the plaintiff's truck, causing it to strike a pole. When the plaintiff exited the truck unarmed and began to run

with his hands raised, a third officer shot him multiple times, including in the back, without warning. The case was resolved following a seven-figure settlement.

53. In *Erickson v. City of Hemet, et al.,* No. 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9.

54. In *Edmond v. City of Hemet*, in October of 2021, HPD officers encountered the plaintiff in a store parking lot, where he was allegedly panhandling, and asked him to leave, which the plaintiff did. After the plaintiff and the officers returned, the plaintiff began to again comply with the officers' commands, and the officers grabbed him, punched him in the face, forced him to the ground, and restrained him. The case resolved following a six-figure settlement before litigation.

55. In *Drye v. City of Hemet*, No. 5:23-cv-02152, HPD shot dead Christopher Drye at his own home in Hemet on February 21, 2023. He was lawfully on his own property, not suspected of committing a crime, and was not threatening the officers or any other person. This case is currently in litigation in federal district court.

56. In *Hereford v. City of Hemet,* No. 5:22-cv-00394-JWH-SHK, in March of 2021, HPD officers stopped one of the plaintiffs while he was in his parked car in front of his fiancée's home and arrested him for driving with an allegedly suspended license. The officers then began searching for his car, which his fiancée and her daughter began to film. The officers responded by threatening his fiancée and her daughter with arrest, knocking the daughter's phone out of her hand, striking the fiancée, and causing her a variety of injuries in her head, neck, shoulder, and back. This case is currently in litigation in federal district court.

57. In *Ladefoged v. City of Hemet,* No. 5:19-cv-00903-SVW-SHK, in August of 2018, HPD officers encountered the plaintiff behaving erratically while standing on a balcony and swinging a stick in the air. The officers responded by releasing a K-9 dog to bite the plaintiff before tasing him multiple times and hogtieing him, resulting in his death. The case resolved following a six-figure settlement.

58. In *Lowe v. County of Riverside et al.*, No. 5:24-cv-00169, on January 26, 2022, an HPD officer ordered his canine to bite a man sitting in his car and to continue to bite him

when the man was not a threat of harm to any person and not attempting to flee. The case is still in litigation in federal district court.

59. In *Baxter v. City of Hemet*, No. 5:21-cv-01331-JWH-SP, on August 9, 2019, an HPD officer held a man at gunpoint during a traffic stop, which the federal district court held created a genuine issue of material fact whether the officer engaged in excessive force. The case is still in litigation in federal district court.

60. In *Martin v. City of Hemet,* No. 5:18-cv-02377-JGB-KK, in October of 2017, the plaintiff was stopped by officers in a parking lot while his wife was in her car nearby. When the plaintiff began to walk away from the officers and his wife, the officers commanded him to drop a small pocketknife he was holding, and the plaintiff put his hands above his head. With the plaintiff's hands raised and visible, two HPD officers fired seven to ten shots at him, killing him. The case resolved following a six-figure settlement.

61. In the pre-litigation matter of *Gabriel Garcia v. City of Hemet,* Defendant CITY agreed to a money settlement with an unarmed man who was detained without cause and suffered a fractured orbital as the result of an unreasonable use of force by a CITY police officer.

62. In *Cruz-Garcia v. City of Hemet*, No. 5:23-cv-02130, the plaintiff alleged that on December 9, 2022, an HPD officer punched him in the face, breaking his jaw, while he was handcuffed. The case is still in litigation in federal district court.

63. On May 30, 2023—the same month as the incident subject to this complaint, NBC News Los Angeles reported a video of an HPD officer using excessive and unreasonable force by punching in the head and tasing a man accused of trespassing.[1]

64. Defendants CITY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby

---

[1] NBC News, *Possible Excessive Force by Hemet Officer Under Investigation*, May 30, 2023, https://www.nbclosangeles.com/on-air/possible-excessive-force-by-hemet-officer-under-investigation/3162193/ (accessed June 26, 2024).

ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Jordan and other individuals similarly situated.

65. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Supervisor DOES acted with intentional, reckless, and callous disregard for the life of Mr. Jordan's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and Supervisor DOES were affirmatively linked to and were a significantly influential force behind the injuries of Mr. Jordan.

66. The Defendant CITY's actions and inactions as described above, including the Defendant CITY's unconstitutional customs, practices, and policies, caused the deprivation of Mr. Jordan's rights by Defendants ZUNIGA and DOES; that is, Defendant CITY's unconstitutional customs, practices, and polices are so closely related to the deprivation of Mr. Jordan's rights as to be the moving force that caused the ultimate injury.

67. As a direct and proximate result of the aforementioned conduct, Mr. Jordan suffered physical and mental injuries.

68. Accordingly, Defendants CITY and Supervisor DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(Against Defendants CITY and Supervisor DOES)

69. Mr. Jordan refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

70. Defendants Officer DOES and Supervisor DOES acted under color of law and within the course and scope of their employment as HPD officers for Defendant City. The acts of these Defendants violated Mr. Jordan's particular rights under the United States Constitution.

71. Defendant CITY failed to properly and adequately train HPD officers to handle the usual and recurring situations with which they must deal, including regarding the use of

force generally, de-escalation techniques, the use of tasers, and the detention and arrest of a person. The training polices of Defendants CITY and Supervisor DOES were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

72. The training polices of the CITY were deficient in the following ways:

a. The CITY failed to properly train HPD officers so that officers do not escalate their interactions with residents and do not overreact and resort to use of significant force when use of such force, or of any force at all, was not necessary and where there is no imminent risk of non-*de minimis* physical harm to themselves or others.

b. The CITY failed to properly train HPD officers to properly and adequately assess the need to use force against members of the public whom they come into contact, detain, or arrest, and, where some degree of force reasonably appears necessary, to properly and adequately assess the degree of force to use.

c. The CITY failed to properly train HPD officers so that officers do not permit fear to reach the point of becoming unreasonable fear, thereby resulting in uses of force that cause serious injury to residents, such as Mr. Jordan.

d. The CITY failed to properly train HPD officers in proper police tactics, such as situational awareness. Because of this lack of proper training by the CITY, Defendants ZUNIGA and Officer DOES did not use proper police tactics in handling of the contact with Mr. Jordan, and instead used defective police tactics, including the lack of a situational awareness by the said Defendants.

e. The CITY failed to properly train HPD officers, such as Defendants herein, in the importance of effective communication prior to using force. Because of the lack of proper training by the CITY, said Defendants did not use effective communication prior to and during the use of force against Mr. Jordan.

73. The examples listed above in this complaint of incidents of HPD officers engaging in unlawful, excessive, and unconstitutional uses of force show the repeated and pervasive nature of the problem, which in turn demonstrates the Defendant CITY's failures to properly train HPD officers in the areas listed above. The frequency of these and similar events demonstrates that these incidents and the one involving Mr. Jordan on May 2, 2023 are attributable to Defendant CITY's failure to properly train HPD officers.

74. Defendant CITY and Supervisor DOES failed to re-train Defendant ZUNIGA after the January 26, 2023 incident described above, in which he showed his inadequate training and a propensity for unlawful use of force.

75. Defendants City and Supervisor DOES were deliberately indifferent to the obvious consequences of its failure to train their officers adequately.

76. The failure of Defendant CITY and Supervisor DOES to provide adequate training caused the deprivation of Mr. Jordan's rights by ZUNIGA and Defendant DOES; that is, Defendants' failures to train are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

77. As a direct and proximate result of the aforementioned conduct, Mr. Jordan suffered physical and mental injuries.

78. Accordingly, Defendants CITY and Supervisor DOES are liable to Mr. Jordan for compensatory damages under 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Against Defendants CITY and Supervisor DOES)

79. Mr. Jordan refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

80. Upon information and belief, a final policymaker, including Defendants CITY and Supervisor DOES acting under color of law, had final policymaking authority concerning the acts of Defendants ZUNIGA and Officer DOES, and ratified their conduct and the bases for

them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants ZUNIGA's and Officer DOES's conduct.

81. Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants ZUNIGA and Officer DOES were "within policy," and have ratified multiple prior incidents of the use of excessive force, including the January 26, 2023 incident involving ZUNIGA.

82. The Defendant CITY's unconstitutional ratification of Defendants ZUNIGA's and Officer DOES' use of excessive and unreasonable force caused the deprivation of Mr. Jordan's rights; that is, Defendant CITY's ratification is so closely related to the deprivation of Mr. Jordan's rights as to be the moving force that caused the ultimate injury.

83. Based on information and belief, Defendant CITY has a longstanding practice of unconstitutional policies, including to not discipline, reprimand, retrain, suspend, or otherwise penalize officers in connection with their underlying acts giving rise to constitutional violations, which Defendant CITY routinely ratifies.

84. As a direct and proximate result of the aforementioned conduct, Mr. Jordan suffered mental and physical injuries.

85. Accordingly, Defendant CITY and Supervisor DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

### FIFTH CAUSE OF ACTION

**Supervisory Liability for Acts of Subordinates (42 U.S.C. § 1983)**

(Against Defendant Supervisor and Officer DOES)

86. Mr. Jordan refers to all preceding paragraphs and incorporates them as if set forth in full in this cause of action.

87. At all times relevant, Defendants ZUNIGA, Officer DOES, and Supervisor DOES acted under color of law and within the course and scope of their employment for Defendant CITY and HPD.

88. At all relevant times herein, ZUNIGA and some Officer DOES were acting under the supervision and direction of other Defendant Officer DOES who were the supervisors on scene and/or scene commanders.

89. Defendants ZUNIGA and Officer DOES violated Mr. Jordan's constitutional rights when they used excessive and unreasonable force against him.

90. Defendants Officer DOES and Supervisor DOES knowingly contributed, participated in, and failed to terminate or intervene in the constitutional violations as described herein. In other words, the conduct of Defendants Officer DOES and Supervisor DOES violated Mr. Jordan's rights through their unconstitutional policies, procedures, training, supervision, and direct involvement in this action.

91. Defendants Officer DOES and Supervisor DOES knew of should have known that Mr. Jordan was not an immediate threat to officers or any other person at the time force was used and should have de-escalated the situation as opposed to escalating the situation themselves and allowing the situation to escalate by the conduct of their subordinates.

92. Defendants Officer DOES and Supervisor DOES knew their subordinate Officer DOES were engaging in the use of force against Mr. Jordan and knew or reasonably should have known the subordinates' conduct would deprive him of his right to be free from excessive force, and that this excessive force created a substantial risk of harm to Mr. Jordan, including serious physical and mental injuries. They also knew or reasonably knew of ZUNIGA's propensity for excessive force, and that this propensity posed a substantial risk of harm to residents such as Mr. Jordan.

93. Defendants Officer DOES and Supervisor DOES disregarded these risks and failed to act to prevent their subordinates, including ZUNIGA, from engaging in the excessive force against Mr. Jordan, such as by reprimanding, controlling, disciplining, training, or terminating them.

94. By their individual conduct as described herein, Defendants Officer DOES and Supervisor DOES set in motion a series of acts by their subordinates, including ZUNIGA. Once set in motion, Defendants Officer DOES and Supervisor DOES refused to terminate the series

of acts by their subordinates that Defendants Officer DOES and Supervisor DOES knew or reasonably should have known would cause the subordinates to deprive Mr. Jordan of his rights.

95. Defendants Officer DOES and Supervisor DOES disregarded the known and/or obvious consequence that their particular policy, training, and supervision deficiencies and omissions would cause their subordinates to violate Mr. Jordan's constitutional rights; and the policy and training deficiencies and omissions of Defendants Officer DOES and Supervisor DOES caused their subordinates to deprive Mr. Jordan of his constitutional rights.

96. Defendants Officer DOES' and Supervisor DOES' conduct was so closely related to the deprivation of Mr. Jordan's rights, specifically because they personally participated in those deprivations, that it was the moving force—and substantial factor—that caused his ultimate injury, harm, and/or damages.

97. As a direct and proximate result of the conduct of Defendants Officer DOES and Supervisor DOES, Mr. Jordan suffered great physical and mental injuries.

98. Accordingly, Defendants Supervisor and Officer DOES are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

99. The conduct of Defendants Officer DOES and Supervisor DOES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Jordan and therefore warrants the imposition of exemplary and punitive damages as to Defendants Officer DOES and Supervisor DOES.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for a jury trial and for judgment against Defendants CITY, ZUNIGA, and DOES 1-10 as follows:

1. For compensatory damages according to proof at the time of trial;
2. For general and special damages, including damages for emotional and mental distress, in an amount to be determined at trial;
3. For punitive damages against the individual defendants in an amount to be proven at trial;

4. For attorney's fees pursuant to 42 U.S.C. § 1988;

5. For reasonable costs of this suit;

6. For interest; and

7. For such other and further relief as the court deems just and proper.

Dated: July 1, 2024                    **QURESHI LAW PC**

By: */s/ Omar Qureshi*
    Omar G. Qureshi
    Max A. Schoening

*Attorneys for Plaintiff Arturro Jordan*

## DEMAND FOR JURY TRIAL

Plaintiff Arturro Jordan hereby demands a trial by jury as to all causes of action.

Dated: July 1, 2024                    **QURESHI LAW PC**

By: */s/ Omar Qureshi*
    Omar G. Qureshi
    Max A. Schoening

*Attorneys for Plaintiff Arturo Jordan*