1  Eugene P. Ramirez (State Bar No. 134865)
      *eugene.ramirez@manningkass.com*
2  Andrea Kornblau (State Bar No. 291613)
      *andrea.kornblau@manningkass.com*
3  Khouloud Pearson (State Bar No. 323108)
      *Khouloud.Pearson@manningkass.com*
4  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
5  801 S. Figueroa St, 15th Floor
   Los Angeles, California 90017-3012
6  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
7
   Attorneys for Defendants, CITY OF
8  HEMET and OFFICER JESSE ZUNIGA

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  ARTURRO JORDAN,                    | Case No. 5:24-cv-01362-JGB-KSx
                                       | *[Hon. Jesus G. Bernal, District Judge;*
13              Plaintiff,             | *Hon. Karen L. Stevensen, Chief*
                                       | *Magistrate Judge]*
14         v.

15  CITY OF HEMET, a municipal         | **DEFENDANTS' NOTICE OF**
    corporation; JESSE ZUNIGA, an      | **MOTION AND MOTION FOR**
16  individual; and DOES 1 through 10, | **SUMMARY JUDGMENT;**
    individuals, inclusive,            | **MEMORANDUM OF POINTS AND**
17                                     | **AUTHORITIES**
                Defendants.
18                                     | *Filed concurrently with:*
                                       | *-Statement of Uncontroverted Facts;*
19                                     | *-Evidence in Support of Motion; and*
                                       | *-[Proposed] Order*
20
                                       | Date:      January 12, 2026
21                                     | Time:      9:00 a.m.
                                       | Crtrm.:  1
22

23

24       **TO THE COURT, PLAINTIFF, AND PLAINTIFF'S ATTORNEYS OF**

25  **RECORD:**

26       **PLEASE TAKE NOTICE THAT** on January 12, 2026, at 9:00 a.m., or as

27  soon thereafter as the matter may be heard in Courtroom 1 of the above captioned

28  court located at 3470 Twelfth Street, Riverside, California 92501-3801, defendants

                                      1

City of Hemet and Officer Jesse Zuniga will move this Court for an order granting summary judgment in their favor based on plaintiff Arturo Jordan's Complaint [Dkt. 1].

This motion is based upon the grounds that there are no triable issues of material fact and that the moving Defendants are entitled to judgment as a matter of law as follows:

1.      Officer Zuniga is entitled to judgment on Plaintiff's first claim for relief for excessive force because the uncontroverted facts establish that Officer Zuniga did not use excessive force and, even if he did, he is entitled to qualified immunity.

2.      Since Officer Zuniga did not violate Plaintiff's constitutional rights or is immune from liability, Plaintiff's boilerplate *Monell* claims against the City for unconstitutional custom or policy, failure to train and ratification (which are, in any event, unsupported by any evidence) also fail. (Second, Third, and Fourth Claims, respectively.)

3.      The City is entitled to judgment on Plaintiff's second claim for relief for unconstitutional custom, practice or policy because the uncontroverted facts establish that there was no such unconstitutional custom, practice or policy.

4.      The City is entitled to judgment on Plaintiff's third claim for relief for unconstitutional failure to train because the uncontroverted facts establish that there was no such unconstitutional failure to train.

5.      The City is entitled to judgment on Plaintiff's fourth claim for relief  for ratification because the uncontroverted facts establish that there was no such ratification.

6.      The City is entitled to judgment on Plaintiff's fifth claim for supervisory liability because Plaintiff has failed to name or serve any defendants.

7.      Officer Zuniga is entitled to judgment on plaintiff's claim for punitive damages. There is no evidence that he acted with malice, oppression, or reckless disregard for the decedent's rights during the incident.

1    This motion is made following the conference of counsel pursuant to L.R. 7-3

2  which took place on December 9, 2025, after Plaintiff's counsel requested to

3  reschedule a planned conference on December 8, 2025.

4    This Motion is based on this Notice of Motion, the attached Memorandum of

5  Points and Authorities, the concurrently filed Statement of Uncontroverted Facts,

6  Evidence in Support of Motion for Summary Judgment, and all of the pleadings, files,

7  and records in this proceeding, all other matters of which the Court may take judicial

8  notice and any argument or evidence that may be presented to or considered by the

9  Court prior to its ruling.

10  DATED:  December 15, 2025          Respectfully submitted,

11

12                                         **MANNING & KASS**
                                          **ELLROD, RAMIREZ, TRESTER LLP**

13

14

15                     By:    _____/s/ Andrea Kornblau_____

16                            Andrea Kornblau
                             Attorneys for Defendants, CITY OF
17                            HEMET and OFFICER JESSE ZUNIGA

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

1.  INTRODUCTION ........................................................................................4

2.  STATEMENT OF FACTS ..........................................................................4

3.  LEGAL STANDARD FOR SUMMARY JUDGMENT .....................................7

4.  PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS ........................................9

    A.  Officer Zuniga Did Not Use Excessive Force .................................. 10

    B.  Even If Officer Zuniga's Use of Force Was Unreasonable He Is Entitled To Qualified Immunity ............................................................................ 13

5.  PLAINTIFF'S *MONELL* CLAIMS AGAINST THE CITY FAIL .................... 16

    A.  Plaintiff's *Monell* Claims Fail Because There Was No Excessive Force ....... 16

    B.  There Was No Unconstitutional Custom, Practice Or Policy ........................ 17

    C.  There Was No Unconstitutional Failure To Train ............................. 18

    D.  There Is No Evidence Of Any Unconstitutional Ratification of The Alleged Excessive Force ............................................................................ 20

6.  PLAINTIFF'S FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED ...... 20

7.  PUNITIVE DAMAGES AGAINST OFFICER ZUNIGA ARE UNSUPPORTED BY THE RECORD .................................................... 21

8.  CONCLUSION ................................................................................ 21

**MOTION FOR SUMMARY JUDGMENT**

MANNING | KASS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ............................................................... 7, 8

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................................................... 8

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) ..................................................... 21

*Cnty. of L.A. v. Mendez*, 581 U.S. 420 (2017). ....................................................................................... 9

*Connick v. Thompson,*
     563 U.S. 51 (2011) ........................................................................................................................... 19

*District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018) ....................................................................... 13

*Est. of Strickland v. Nevada Cnty.,* 69 F.4th 614, 620 (9th Cir. 2023). ......................................... 9, 10

*Felarca v. Birgeneau,* 891 F.3d 809, 822 (9th Cir. 2018) ................................................................... 13

*Fogel v. Collins,* 531 F.3d 824, 834 (9th Cir. 2009 ............................................................................. 14

*Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994) .............................................................. 13

*Graham v. Connor,* 490 U.S. 386, 396 (1989). ................................................................................... 9, 11

*Hansen v. Black*, 885 F.2d 642, 644 (9th Cir. 1989). ............................................................................. 8

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ................................................................................. 12

*Id.* 9

*Jackson v. County of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) ................................................ 14

*Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018) ........................................................................ 10

*Kisela v. Hughes*, 584 U.S. 100, 104 (2018). ....................................................................................... 13

*Matsushita Elec. v. Zenith Radio*, 475 U.S. 574, 586 (1986) ............................................................... 8

*Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011 ......................................................................... 6

*Nissan Fire & Marine Ins. Co.*, 210 F.3d. at 1106 ............................................................................... 20

*Oakry v. Tempe, City of*, 629 F. Supp. 3d 974, 985 (D. Ariz. 2022) ................................................. 12

*Perez v. City of Fresno,*
     98 F.4th 919 (9th Cir. 2024) ............................................................................................................ 19

*S.B. v. County of San Diego,* 864 F.3d 1010, 1015 (9th Cir. 2017) ................................................... 13

*Sanders v. City of Fresno,* 551 F. Supp. 2d 1149, 1170 (E.D. Cal. 2008 ........................................ 11

*Santos v. Gates,*
     287 F.3d 846 (9th Cir. 2002) ............................................................................................................. 9

*Scott v. Harris,* 550 U.S. 372, 378, 380–81 (2007). ............................................................................ 10

*Smolen v. Deloitte, Haskins & Sell*s, 921 F.2d 959, 963 (9th Cir. 1990) (citations omitted). ........... 8

*Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).
     .................................................................................................................................................. 7, 8

*Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir. 1994) ........................................................... 8

*Wilson*, 2025 WL 97599, at *16 ............................................................................................................ 20

**STATUTES**

*Cal. Gov't Code § 818* .......................................................................................................................... 21

*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ........................................................................ 20

*Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022). ......................................... 20

*F.R.C.P. 56(c).* ........................................................................................................................................ 7

*Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994) ..................................................... 21

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ............................................... 19, 20

*Itzhaki v. United States Liab. Ins. Co.*, 536 F. Supp. 3d 651, 654 (C.D. Cal. 2021) ....................... 20

*Ohlson v. Washington*, 2024 WL 3755862, at *1 (W.D. Wash. Aug. 12, 2024 .............................. 21

*Smith v. Wade*, 461 U.S. 30, 56 (1983). .............................................................................................. 21

*Ward v. Cityof San Jose,* 967 F.2d 280, 286 (9th Cir. 1991 .............................................................. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANNING | KASS

**MOTION FOR SUMMARY JUDGMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.    INTRODUCTION

Officer Jesse Zuniga's routine interaction with Plaintiff Arturro Jordan on May 2, 2023 turned physical solely because Plaintiff, a felon on probation for various weapons charges, tried to flee the scene and forcibly resisted Officer Zuniga's and his partner's, Officer Joromat's, efforts to bring him under control. Consistent with their training, Officers Zuniga and Joromat deployed hands-on force and used a taser in "drive-stun" mode against a resisting and violent suspect who was later charged with six criminal acts (including felony charges) as a result of the interaction. The undisputed evidence confirms that Officer Zuniga's use of intermediate force was reasonable under the specific circumstances he was in. Alternatively, Officer Zuniga is entitled to qualified immunity, because no clearly established law put him on notice that his use of force in these specific circumstances was unconstitutional. Since Officer Zuniga did not violate Plaintiff's constitutional rights or is immune from liability, Plaintiff's boilerplate *Monell* claims against the City for unconstitutional custom or policy, failure to train and ratification (which are, in any event, unsupported by any evidence) also fail. Finally, Plaintiff has failed to name or serve any defendants with respect to his fifth claim for "supervisory liability." For these reasons, no rational juror could find in Plaintiff's favor and Officer Zuniga and the City are entitled to judgment in their favor. The Motion should be granted.

## 2.    STATEMENT OF FACTS

On May 2, 2023, officers Zuniga and Joromat of the Hemet Police Department were patrolling in separate black and white marked police vehicles and wearing full uniforms. At approximately 10:50 a.m. the officers were patrolling inside the Green Tree Apartments. The Green Tree Apartments are a high crime area and officers were conducting extra patrols in the apartments due to recent shootings in the area. (SUF 1-3).

While patrolling, Officer Zuniga observed someone sitting in the driver seat of

**MOTION FOR SUMMARY JUDGMENT**

a white, four door, Maserati that was parked under a carport. As Officer Zuniga neared the driver side of the Maserati, he recognized Plaintiff as the occupant of the Maserati. Officer Zuniga had arrested Plaintiff in January 2023 for a weapons and narcotic offense. In that incident, Plaintiff had been armed with a handgun and had led officers on a foot chase through the Green Tree complex before having to be physically taken down in order to arrest him. Officer Zuniga recalled from his previous contact with Plaintiff that Plaintiff was a convicted felon, known to be armed and dangerous and violent toward officers. (SUF 4-5).

As Officer Zuniga drove toward Plaintiff, he observed Plaintiff throw a black object to the rear of the vehicle and also conceal something underneath the driver seat. Officer Zuniga stopped his car and engaged Plaintiff in a consensual encounter. Officer Joromat was present for the encounter. Plaintiff exited his Maserati and walked towards the officers and sat on the trunk of his Maserati. (SUF 6-8).

The officers turned on their body worn cameras. The conversation was initially cordial. In the conversation Plaintiff admitted that he was on probation from Seattle. Officer Zuniga asked Plaintiff what he had thrown under the seat of his car. Plaintiff initially denied throwing anything and then admitted that he had hidden a marijuana cigarette. (SUF 9-11).

Officer Zuniga told Plaintiff that he was going to check to make sure that Plaintiff had not hidden a gun in the Maserati. Plaintiff objected to this and denied hiding a gun. Officer Zuniga told Plaintiff that all he was going to do was a protective sweep for the officers' safety. Officer Zuniga intended to conduct a limited search for his immediate safety and safety of others as he believed Plaintiff had tossed a firearm in the back of the car. Officer Zuniga was concerned for his safety because:

-Plaintiff is a violent felon with several weapons arrests and known to violently resist law enforcement; and

-Plaintiff had not been patted down and might have had a weapon on his person. Plaintiff then consented to the search. (SUF 12-15).

Officer Zuniga opened the driver's side door and asked Plaintiff about a plastic baggie he found near the front seat asking Plaintiff if he was dealing drugs. Plaintiff denied dealing drugs. Zuniga informed Plaintiff that he was going to search the Maserati and Plaintiff objected accusing Officer Zuniga of harassing him. Plaintiff became verbally agitated. Officer Zuniga warned Plaintiff that if he did not calm down he would handcuff him. Plaintiff continued to be uncooperative and began using his phone. It is not uncommon for persons to use their phones to summon others to a location intending the newcomers to confront the officers. Officer Zuniga asked Plaintiff to turn around and put his hands behind his back intending to handcuff him. (SUF 16-24).

Plaintiff refused those commands. Instead, Plaintiff lifted his arms to avoid being handcuffed and pushed Officer Zuniga's hand. Plaintiff then fled on foot. Plaintiff ran around the front of the Maserati and then along the other side of the car headed out of the carport. Officer Zuniga followed and attempted to trip Plaintiff by kicking him in the lower torso. Plaintiff was thrown off-balance but continued to run. As Plaintiff exited the carport, his path was partially blocked by Officer Zuniga's police car. Plaintiff turned left along the side of the police car and pushed past Officer Joromat who had moved to intercept Plaintiff. Plaintiff and Officer Joromat went down. Plaintiff claims that Officer Joromat "body slammed" him into the police car but the BWC video refutes this claim. Officer Joromat was on top of Plaintiff attempting to handcuff Plaintiff who was fiercely struggling. Officer Zuniga arrived and joined in the effort to try and control Plaintiff. The officers repeatedly told Plaintiff to stop struggling and allow himself to be handcuffed. (SUF 25-40).

Officer Zuniga used his taser twice in "drive-stun" mode in an attempt to gain control over Plaintiff. "Drive-stun" is a lower level of force than using "probe" mode.[1]

---

[1] In probe or dart mode, two aluminum darts connected to the taser by wires are propelled by compressed nitrogen into the person. The taser then delivers a 1200 volt

The taser was ineffective as Plaintiff continued to violently struggle. Officer Zuniga delivered one "distraction strike" to the left side of Plaintiff's face with his right knee. Plaintiff continued to fiercely struggle with the officers who were eventually able to put handcuffs on Plaintiff. The officers them promptly climbed off Plaintiff, raised him to his feet and placed him in the back of the police car. Plaintiff claims that the officers "slammed" his head against the police car in putting him in the back, but the BWC video refutes this. (SUF 41-47).

Officers then searched Plaintiff's car. Following standard procedure, the officers started the search at the front of the car and worked their way backwards. The officers found two clear baggies with what appeared to be cocaine and rolled up dollar bills for snorting it. The officers also found a loaded AK-47 in the back seat. The AK-47 had a round in the chamber and 27 rounds in the 30 round capacity magazine. Plaintiff was placed under arrest for violation of:

-Penal code § 29800(A)(1) - Felon in possession of firearm;

-Penal Code §30305 (A)(1) - Felon in possession of ammunition;

-H&S Code §11370.1(a) - Possession of controlled substance while armed w/ loaded firearm,

-Penal Code § 25850 (c) - Carry loaded handgun: not registered owner;

-Penal Code § 2022.1 PC - Committing a Felony while on Bail; and

-Penal Code § 148(a)(1) - Resist/delay/obstruct Peace Officer.

(SUF 50-54).

## 3.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the moving party demonstrates "that there is no genuine issue as to any material fact ..." F.R.C.P. 56(c). A fact is material when it

---

electric charge which instantly overrides the person's central nervous system, paralyzing their muscles. In drive mode, the taser is pressed directly against the person to deliver a lesser shock that causes pain but does not override the person's central nervous system. *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011).

1   affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248
2   (1986).

3        Where summary judgment requires the court to apply law to undisputed facts,
4   it is a mixed question of law and fact. *Sousa v. Unilab Corp. Class II (Non-Exempt)*
5   *Members Group Benefit Plan*, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002). Where
6   the case turns on a mixed question of law and fact and the only dispute relates to the
7   legal significance of the undisputed facts, the controversy for trial collapses into a
8   question of law that is appropriate for disposition on summary judgment. *Union Sch.*
9   *Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir. 1994); *Sousa*, *supra* at 1049.

10       In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme
11  Court rejected the contention that the moving party must support its summary
12  judgment motion with evidence proving the non-existence of an essential element of
13  plaintiff's claims. Rather, the Court held that the moving party bears the burden of
14  informing the court of the basis for its motion, and identifying parts of the file which
15  it believes indicated an absence of a genuine issue of material fact. *Id*. at 323. The
16  burden then shifts to the respondent to set forth affirmative evidence. The non-moving
17  party "must set forth specific facts showing that there is a genuine issue of material
18  fact for trial." *Anderson supra* at 248. The party who bears the burden of proof at trial
19  also bears the burden of producing sufficient evidence in opposition to the summary
20  judgment motion to enable reasonable jurors to find for that party. The standard is the
21  same as that for judgment as a matter of law under Federal Rules of Civil Procedure,
22  Rule 50(a). *Anderson supra* at 249.

23       In opposing a motion for summary judgment, it is insufficient to merely show
24  that there is some "metaphysical doubt as to material facts." *Matsushita Elec. v. Zenith*
25  *Radio*, 475 U.S. 574, 586 (1986). The plaintiff must show the existence of a genuine
26  issue and "produce at least some 'significant probative evidence tending to support
27  the complaint.'" *Smolen v. Deloitte, Haskins & Sell*s, 921 F.2d 959, 963 (9th Cir.
28  1990) (citations omitted). The responding party cannot merely rest upon the

MANNING | KASS

8

1  allegations and the pleadings. *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir. 1989).

2  **4.      PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS**

3        Plaintiff's First Claim for Relief is against Officer Zuniga for excessive force

4  under 42 U.S.C. § 1983. A claim that a law enforcement officer used excessive force

5  during a detention or arrest is analyzed under the Fourth Amendment. *Barnes v. Felix,*

6  605 U.S. 73 (2025). Force is excessive when "it is greater than is reasonable under

7  the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002), *abrogated on*

8  *other grounds by Cnty. of L.A. v. Mendez*, 581 U.S. 420 (2017). Liability depends

9  upon whether the force deployed by the officer was justified from "the perspective of

10  a reasonable officer on the scene, taking due account of both the individual interests

11  and the governmental interests at stake." *Id.* at 79. The inquiry into the reasonableness

12  of the force used requires analyzing the "totality of the circumstances." *Id*. at 80.

13  There is "no easy-to-apply legal test or on/off switch in this context." *Id.* Rather, as

14  the Supreme Court recently stated, a court must "slosh its way through a factbound

15  morass." *Id*. The severity of the crime prompting a detention can carry weight in the

16  analysis. So too can actions the officer took during the detentions, such as giving

17  warnings or otherwise trying to control the encounter. And the detained person's

18  conduct is always relevant because it indicates the nature and level of the threat he

19  poses, either to the officer or to others. *Id.*

20        The most important factor in determining whether there was excessive force is

21  whether the suspect posed an immediate threat to the safety of the officers or others.

22  *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023). Notably,

23  reasonableness "must be judged from the perspective of a reasonable officer on the

24  scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S.

25  386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact

26  that police officers are often forced to make split-second judgments in circumstances

27  that are tense, uncertain, and rapidly evolving about the amount of force that is

28  necessary in a particular situation." *Id.* at 396-97. "Not every push or shove, even if

1  it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

2  Amendment." *Id.* at 396.

3      These principles apply even when officers are reasonably mistaken about the

4  nature of the threat." *Strickland, supra,* at 621. "Officers can have reasonable, but

5  mistaken, beliefs as to the facts establishing the existence of an immediate threat, and

6  in those situations courts will not hold that they have violated the Constitution." *Id.*

7  For example, "[i]f an officer reasonably, but mistakenly, believed that a suspect was

8  likely to fight back, the officer would be justified in using more force than in fact was

9  needed." *Id.*

10      **A.      Officer Zuniga Did Not Use Excessive Force**

11      Defendants' interrogatory no. 1 required Plaintiff identify each act of alleged

12  excessive force. In response, Plaintiff describes the incident very differently than what

13  is depicted in the BWC video. Where, as here,  videos "quite clearly contradict[] the

14  version of the story" told by a plaintiff, the Court is not required to adopt the version

15  of the facts that is "blatantly contradicted by the record" and, instead, must view the

16  facts "in the light depicted by the [videos]." *Scott v. Harris*, 550 U.S. 372, 378, 380–

17  81 (2007).

18      In his interrogatory response, Plaintiff asserts that "[a]fter [Plaintiff] moved

19  away from them, Officer Zuniga kicks Plaintiff in the lower back and then Officer

20  Joromat body slams him into a police car." The BWC video does not show Plaintiff

21  "moving away" from the officers, it clearly shows him running as fast as he can in a

22  clear attempt to flee. Officer Zuniga's kick in an attempt to trip Plaintiff was

23  reasonable given that Plaintiff was fleeing and there was a strong possibility he was

24  armed. Officer Joromat is not a defendant in this case, and Plaintiff has neither alleged

25  nor produced evidence of Officer Zuniga's "integral participation" in any use of force

26  by Officer Joromat.[2] *See Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018) (peace

27  

28  [2] Plaintiff's First Claim is stated against Officer Zuniga and "Officer Does."

MANNING | KASS

officers "cannot be held liable for another's constitutional violation under 42 U.S.C. § 1983 unless they were integral participants in the unlawful conduct"). Regardless, the BWC video shows that the alleged "body slam" simply did not happen. Rather, Plaintiff attempted to push past Officer Joromat and in the scuffle fell.

Plaintiff next asserts in his interrogatory response that the officers pinned him on the pavement, tased him twice and "forcefully kneed [Plaintiff] in the head." Plaintiff makes it seem as if he was passively laying on the ground and the officers assaulted him, unprovoked. The BWC video shows a very different scenario: Plaintiff was fiercely struggling with the officers in an attempt to avoid being handcuffed and continue his flight. The BWC video also shows that the officers repeatedly asked Plaintiff to stop struggling. Officer Zuniga tased Plaintiff twice using the lesser "drive mode" solely in attempt to effectuate the handcuffing. The knee to Plaintiff's head was performed with well less than full force and done to distract Plaintiff.

These uses of nondeadly force were reasonable considering the totality of the circumstances under *Graham*. Plaintiff was a felon with a history of being armed and dangerous and violent towards officers. Officer Zuniga had seen Plaintiff attempt to hide what appeared to him to be a gun (and in fact the subsequent search found a gun). Plaintiff had not been patted down and as far as the Officers knew at the time was armed. Plaintiff first ran and then after he was taken down fiercely struggled in an attempt to escape. Plaintiff ignored repeated requests that he stop resisting. The undisputed facts thus, establish that the use of force was reasonable.

Under these circumstances, Officer Zuniga's use of force was reasonable. Officer Zuniga kicked Plaintiff to prevent his escape, and it is well-settled that the right to make an arrest "necessarily carries with it the right to use some degree of

_____

Complaint at 6. Despite the opportunity to complete discovery, Plaintiff has never moved to name Officer Joromat (or any other officer) in the place of any Doe Defendant.

physical coercion or threat" to effectuate the arrest. *Graham*, 490 U.S. at 396. Thus, this use of minimal, hands-on force was not excessive.

Officer Zuniga's use of his Taser was also not excessive. The use of a taser in "drive-stun" mode is considered a "medium" or intermediate use of force. *See Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1170 (E.D. Cal. 2008), *aff'd*, 340 F. App'x 377 (9th Cir. 2009) (finding use of taser was reasonable where subject was agitated, not following commands, and appeared to pose a threat to his wife, and collecting cases). The undisputed record here demonstrates that at the time Officer Zuniga used his taser, Plaintiff was acting aggressively and not compliant with the officers' commands; Officer Zuniga was aware of Plaintiff's history as a violent felon and was uncertain as to whether Plaintiff had ready access to a weapon. These factors "all support that [Officer Zuniga's] use of force was reasonable." *Oakry v. Tempe, City of*, 629 F. Supp. 3d 974, 985 (D. Ariz. 2022) (finding use of taser did not violate Fourth Amendment in similar circumstances).

Officer Zuniga's use of a single limited and focused distraction blow (kneeing Plaintiff's face) to overcome Plaintiff's resistance and place him in handcuffs was likewise objectively reasonable. Distraction blows are a well-recognized and approved method to overcome resistance. *Barber v. Santa Maria Police Dep't,* 2010 WL 5559708, Note 7 (C.D. Cal. Sep. 1, 2010); *Wilson v. Unknown Oceanside Police Officers*, 2025 WL 97599, *8 (S.D.Cal. 2025), *report and recommendation adopted*, 2025 WL 418750 (S.D. Cal. Feb. 6, 2025) (single distraction blow to the face of suspect resisting arrest reasonable). Here, as in *Wilson*, when Officer Zuniga delivered the distraction blow, "a reasonable officer would have perceived only that Plaintiff was combative, unrestrained, possibly armed, and not under the officers' control." *Id.* at *9. Officer Zuniga's "use of a distraction blow . . . is exactly the sort of in-the-moment decision the Court must account for when assessing whether the use of force was reasonable." *Id.*

**B.    Even If Officer Zuniga's Use of Force Was Unreasonable He Is Entitled To Qualified Immunity**

Even if Officer Zuniga used excessive force (which he did not), Plaintiff's claim fails because Officer Zuniga is entitled to qualified immunity. Qualified immunity protects officers from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"[O]fficers are entitled to qualified immunity under § 1983 ***unless*** (1) they violated a federal statutory or constitutional right, ***and*** (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018) (emphasis added). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.*

"The doctrine of qualified immunity assumes that police officers do not knowingly violate the law," and the Court must start by "presum[ing]" the officers' immunity. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). To overcome

MANNING | KASS

this presumption, Plaintiff must either demonstrate that the officer's conduct was "so egregious that any reasonable person would have recognized a constitutional violation," *see Id*., or "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Felarca v. Birgeneau*, 891 F.3d 809, 822 (9th Cir. 2018); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (requiring case precedent which exists at the time of the incident that places an officer on "clear notice" that their actions violate the Fourth Amendment). An officer is entitled to qualified immunity if "any" reasonable peace officer could have believed that the officer's actions were lawful under the circumstances. *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2009) (test for qualified immunity is whether "any" reasonable officer could have believed that the officers' actions were lawful, not whether "a" reasonable officer could have believed that they were not).

To resolve questions of qualified immunity, courts generally follow a two-step process. First, the court decides whether the facts show that the officer's conduct violated a constitutional right. *Jackson v. County of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citation omitted). Second, the court decides "whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Id*. The court may skip the first step and proceed directly to the second. *Pearson*, *supra* at 227. For the reasons stated above, the Court can answer the first question in the negative – Officer Zuniga did not violate Plaintiff's constitutional rights. But even if the Court determines otherwise, there is no clearly established law putting him on notice that the use of intermediate force against a resisting and possibly armed suspect could violate the Fourth Amendment. To the contrary, the Ninth Circuit has sanctioned the use of similar force in similar circumstances.

In *Emmons v. City of Escondido*, following a reversal and remand by the Supreme Court, the Ninth Circuit confirmed that a suspect who is engaging in more

than passive resistance to arrest has no right "to be free from the application of non-trivial force." 921 F.3d 1172, 1175 (9th Cir. 2019). Because qualified immunity attaches only if "there exists a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment," the *Emmons* court declined to find cases involving the use of force against non-resisting or passively-resisting suspects put the officer on notice that their use of intermediate, hands-on force against a resisting subject was unconstitutional. *Id.* at 1174 (citing *White v. Pauly*, 580 U.S. 73 (2017)).

In *Turner v. Johnigan*, the Ninth Circuit reversed a denial of summary judgment in similar circumstances, finding there was no precedent that put the officer on clear notice that her use of a taser was excessive. 2022 WL 823479, at *2 (9th Cir. Mar. 18, 2022). Importantly, the *Turner* court found other cases in which the use of a taser was deemed unconstitutional were distinguishable, because in the case before it, the suspect "was suspected of committing two serious felonies," "engaged in a scuffle" with the officer, and "continued to resist" the officers. *See id.* Likewise here, Plaintiff was a known violent felon and was violently resisting the officers who were attempting to handcuff him. The *Turner* court further noted that the officer's use of a taser against a forcibly resisting suspect was not "so patently violative of constitutional rights that a reasonable officer would know without guidance from the courts that [her] taser use was unconstitutional." *See id.* That reasoning applies with equal force here.

In *Larkin v. Kenison*, the Ninth Circuit reversed a denial of summary judgment against an officer who used a "leg sweep" to apprehend a person running from him and who refused commands to stop. 2022 WL 1769791, at *2 (9th Cir. June 1, 2022). The *Larkin* court found the suspect was not fully restrained and did not have a clearly established right to be free from a leg sweep take-down under those circumstances. *See id*. The court found significant, and distinguishing, the fact that the suspect was attempting to flee, just as Plaintiff here was doing.

**MOTION FOR SUMMARY JUDGMENT**

Because a reasonable peace officer could have believed the amount of force used was reasonable and there is no particularized case precedent placing Officer Zuniga on notice that the force he used was excessive, he is entitled to qualified immunity. *See Puente v. City of Phoenix*, 123 F.4th 1035, 1061 (9th Cir. 2024) (where "no precedent 'squarely governs' the specific facts at issue" and the case is not "obvious," officers are entitled to qualified immunity).

## 5.    PLAINTIFF'S *MONELL* CLAIMS AGAINST THE CITY FAIL

A civil rights suit against a local government for constitutional violations by its officers cannot proceed on the basis of *respondeat superior* liability. *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory"). Instead, to recover under 42 U.S.C. § 1983 against a local government, the plaintiff must establish municipal liability in one of three ways. First, a local government may be liable if "execution of a government's policy or custom ... inflict[ed] the injury." *Monell, supra* at 694. Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). And third, a local government may be held liable if "the individual who committed the constitutional tort was an official with final policy-making authority" or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Plaintiff here alleges three boilerplate *Monell* claims – his second, third and fourth claims for relief.

### A.    Plaintiff's *Monell* Claims Fail Because There Was No Excessive Force

There is no municipal liability under *Monell* unless there was an underlying constitutional violation. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("Monell claims … require a plaintiff to show an underlying constitutional

violation."); *see also Lowry v. City of San Diego*, 858 F.3d 1248, 1260 (9th Cir. 2017) (affirming summary judgment and noting that "because [plaintiff] did not suffer a constitutional injury, she cannot establish liability on the part of the City"). For the reasons discussed above, Officer Zuniga's use of force was reasonable under the circumstances; alternatively, he is entitled to qualified immunity from any excessive use of force. Either way, there is no predicate liability upon which to base the City's liability under *Monell.*

Even if the Court finds Plaintiff has established a predicate Fourth Amendment violation, his *Monell* claim for unconstitutional custom, practice or policy fails for lack of evidence. Defendants have expended considerable resources responding to Plaintiff's demands for discovery and have produced over 7000 documents in response to requests directed at Plaintiff's *Monell* claims. Despite this production, Plaintiff remains unable to identify any evidence in support of these claims, as set forth below.

**B.     There Was No Unconstitutional Custom, Practice Or Policy**

"A governmental policy is a deliberate choice to follow a course of action by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). A plaintiff can establish *Monell*'s policy requirement by demonstrating that the local government acted "pursuant to an expressly adopted official policy." *Id.* In the absence of a formal or written policy, Plaintiff must demonstrate a "longstanding practice or custom" that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 973-74. Importantly, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* at 974. As a result, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Id.*; *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional

MANNING | KASS

deprivation ordinarily is insufficient to establish a longstanding practice or custom.").

Plaintiff has yet to adduce evidence of any unconstitutional policy, practice or custom that led to the violation of his rights or to explain how that policy, practice or custom led to the violation. His discovery responses to date have simply directed Defendants to "see Plaintiff's complaint in this matter . . ." (Plaintiff's response to interrogatories 13 and 14), which is clearly insufficient to overcome summary judgment. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 198 (2000) ("General allegations of injury may suffice at the pleading stage, but at summary judgment plaintiffs must set forth 'specific facts' to support their claims."). Defendants maintain there is no such policy, practice or custom and none was revealed in discovery. Plaintiff has no evidence to satisfy his burden of proof that the City had an unconstitutional custom, practice or policy. Therefore, this claim fails and summary judgment is appropriate. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d. 1099, 1106 (9th Cir. 2000) (summary judgment is appropriate when after suitable discovery the moving party shows that the nonmoving party does not have evidence to support an essential element of its claim).

## C.    There Was No Unconstitutional Failure To Train

Plaintiff's Third Claim for Relief for "failure to train" fares no better. A *Monell* claim based on a "failure to train" theory requires a stringent standard of proof which Plaintiffs do not and cannot meet here. Failure to train may constitute a basis for liability where "the failure amounts to deliberate indifference." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "Mere negligence will not suffice to show *Monell* liability." *Id*. To show deliberate indifference, Plaintiff must demonstrate that "the need for more or different action is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). "A municipality's culpability for a deprivation of

MOTION FOR SUMMARY JUDGMENT

rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

Furthermore, even if the City failed to adequately train Officers Zuniga (or any other officer), that failure is insufficient to establish liability for the City. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Benavidez*, *supra* at 1154; *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("isolated incidents of criminal wrongdoing" were insufficient to put the county and its sheriff "on notice that a course of training is deficient in a particular respect" and, thus, insufficient to state a *Monell* claim for failure to train); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007) ("absent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant—a much lower standard of fault than deliberate indifference"). Because "even adequately trained officers occasionally make mistakes," *Perez v. City of Fresno*, 98 F.4th 919, 932 (9th Cir. 2024), "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

As with his "custom or policy" claim, Plaintiff has no evidence of the City's failure to train. Again, his discovery responses thus far have simply referred Defendants to his complaint, which is insufficient. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (at summary judgment, "the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor"). Despite the City's production of an additional 7000 documents, Plaintiff still has no evidence that the City's training of its police officers was constitutionally deficient, nor has he linked any lack of training to the alleged violation of his rights. Although the Court must draw inferences in Plaintiff's favor,

**MOTION FOR SUMMARY JUDGMENT**

"inferences are not drawn out of thin air," and it is Plaintiff's "obligation to produce a factual predicate from which the inference may be drawn." *Itzhaki v. United States Liab. Ins. Co.*, 536 F. Supp. 3d 651, 654 (C.D. Cal. 2021). Plaintiff has not, and cannot, do that here.

**D.      There Is No Evidence Of Any Unconstitutional Ratification of The Alleged Excessive Force**

Plaintiff's Fourth Claim for Relief that the City and unknown Does ratified Officer Zuniga's alleged excessive force is likewise unsupported by any evidence. "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). "Ratification generally requires more than acquiescence, and a mere failure to discipline does not amount to ratification of allegedly unconstitutional action." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022).

Here again, Plaintiff has thus far referred Defendants' to his complaint in support of this claim. Plaintiff also asserted in discovery responses "on information and belief" that unnamed supervisors knew about the excessive force and decided not to discipline the officers "thereby approving their conduct." (Response to interrogatory 17). For the same reasons discussed above, this is insufficient: Plaintiff must supply admissible evidence to avoid summary judgment. *See In re Oracle Corp.,* 627 F.3d at 385. True, Plaintiff cited a social media post by the Police Department (attached to this motion as Ex. 14). But that social media post simply provides a very brief synopsis of the arrest without any mention whatsoever of the force used in arresting Plaintiff and is in no way a ratification of the force used to arrest Plaintiff. Lastly, the City has not ratified any excessive use of force. As Plaintiff has no evidence of ratification, this claim fails and summary judgment is appropriate. *Nissan Fire & Marine Ins. Co.*, 210 F.3d. at 1106.

**6.      PLAINTIFF'S FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED**

Plaintiff's Fifth Claim for Relief is for "Supervisory Liability for Acts of

Subordinates" and names only doe defendants. Again, despite a full opportunity to conduct discovery, Plaintiff has "neither identified these defendants nor proffered any evidence of any wrongful conduct against them." *Wilson*, 2025 WL 97599, at \*16. The Court should dismiss this claim with prejudice. *See Ohlson v. Washington*, 2024 WL 3755862, at \*1 (W.D. Wash. Aug. 12, 2024) (adopting report and recommendation and dismissing claims against "ten doe defendants" who never appeared in the action with prejudice).

## 7.  PUNITIVE DAMAGES AGAINST OFFICER ZUNIGA ARE UNSUPPORTED BY THE RECORD

Punitive damages require proof of "evil motive or intent" or "reckless or callous indifference" to constitutional rights. *Smith v. Wade,* 461 U.S. 30, 56 (1983). Nothing in this record supports such a finding. Officer Zuniga acted in good faith at all times during the encounter with Plaintiff. These facts preclude any inference of malice or reckless disregard. See *Ward v. City of San Jose,* 967 F.2d 280, 286 (9th Cir. 1991); *Forrester v. City of San Diego,* 25 F.3d 804, 808 (9th Cir. 1994).

Municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). California likewise bars punitive damages against public entities. Cal. Gov't Code § 818. Any claim for punitive damages against the City must therefore be dismissed.

## 8.  CONCLUSION

For the reasons set forth above, the undisputed record demonstrates Officer Zuniga's use of intermediate force was reasonable under the circumstances; alternatively, the Court should find he is entitled to qualified immunity. The undisputed evidence also does not support a finding of *Monell* liability against the City of Hemet. Finally, Plaintiff's fifth claim against unnamed and unserved Doe Defendants should be dismissed. Accordingly, Summary Judgment on all of Plaintiff's claims for relief is warranted.

DATED:  December 15, 2025          Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**


By:  _____/s/ Andrea Kornblau_____
　　　Andrea Kornblau
　　　Attorneys for Defendants, CITY OF
　　　HEMET and OFFICER JESSE ZUNIGA


### Local Rule 11-6.2 Certification

I am the attorney for Defendants. This brief contains 6195 words, excluding the items exempted by Local Civil Rule 11-6.1

I certify that this brief complies with the word limit of L.R. 11-6.1.

DATED:  December 15, 2025          Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**


By:  _____/s/ Andrea Kornblau_____
　　　Andrea Kornblau
　　　Attorneys for Defendants, CITY OF
　　　HEMET and OFFICER JESSE ZUNIGA